HALL, Judge.
Plaintiff filed this personal injury suit seeking damages for injuries she allegedly sustained when the automobile in which she was a passenger was struck from behind while stopped at a red light. After trial, the district court awarded plaintiff special damages in the sum of $2,077 and $10,000 for pain and suffering, or a total of $12,077. Defendants perfected a suspensive appeal, complaining that the award of damages was excessive. We affirm.
The only issue on appeal is the appropriateness of the trial court’s award of $10,000 for pain and suffering. Defendants-appellants argue that the trial court abused its discretion in granting such a large award, given the factual circumstances of this case. *800 Additionally, appellants argue that plaintiff failed to sustain her burden of proof regarding her damages.
The accident in question occurred on July 20, 1978. Plaintiff was a passenger in her own automobile which was being driven by her boyfriend at the time of the accident. The accident was not severe, damage to plaintiff’s vehicle being minimal (approximately $500). After the police completed their investigation, plaintiff and her boyfriend went to dinner and then shopping, activities they had planned prior to the accident.
Plaintiff testified that she felt stiff and sore the morning after the accident but went to work at Stuart’s Dress Shop as usual. Plaintiff testified she missed some work because of backache but could not recall the dates or lengths of her absences. Twelve days after the accident, plaintiff visited Dr. W. W. Fox, an orthopedic surgeon, who diagnosed her injuries as a sprain of the cervical and lumbar spine. He noted slight spasm in the neck and lumbar spine but found range of motion normal in the neck and back areas. Dr. Fox advised plaintiff to take aspirin-like drugs and to treat the neck and back areas with heat.
Plaintiff returned to Dr. Fox on August 24, 1978, complaining of tenseness in the upper back and neck which was particularly bad on long, hard working days. Dr. Fox prescribed an analgesic and advised plaintiff to continue the use of moist heat on the painful areas. Plaintiff saw Dr. Fox again on October 10, 1978, complaining of continuous pain in the neck area. At this time, Dr. Fox referred plaintiff to a physical therapist for treatment.
Mr. Teitjen, a physical therapist, saw plaintiff twice in December 1978. He testified at trial that plaintiff had muscle spasms in the cervical and lumbar areas of the spine with tenderness and stiffness and a loss of range of motion in her neck and back. Mr. Teitjen’s treatment consisted of hydrocollator packs, ultrasound electrical stimulation and some cervical traction exercises.
Plaintiff saw Dr. Fox again on March 29, 1979 complaining of pain in her neck and upper shoulder. Tenderness and tightness of the neck muscles was noted as well as slight tenderness in the low back unaccompanied by spasm. Dr. Fox again referred plaintiff to Mr. Teitjen for physical therapy. During May and June, 1979, Mr. Te-itjen saw plaintiff about eight times. Mr. Teitjen testified that, on the first of these visits, plaintiff had considerable spasm of the cervical and lumbar paraspinals with decreased range of motion, tenderness and stiffness of the lower back. He continued the treatment begun on plaintiff’s first visit and also put her on a transcutaneous electrical nerve stimulator (TNS unit) to relieve pain and spasm. The last time Mr. Teitjen saw plaintiff she still had tenderness and tightness of the muscles on both sides of her neck and back and still had some loss of range of motion. Plaintiff was instructed to continue using the TNS unit at home.
Plaintiff saw Dr. Fox in August and in December 1979 still complaining of neck and back problems. At time of trial in May 1980, Dr. Fox testified that plaintiff’s periodic spasms, tenderness, etc., could continue for several months to a year.
Plaintiff testified she was a very active person prior to the accident. She enjoyed all sorts of physical activities. Prior to the accident plaintiff engaged in ballet, gymnastic exercises, and yoga. Since the accident plaintiff cannot tolerate being on her feet for long periods of time; therefore, plaintiff can no longer dance or engage in gymnastic exercises without some pain. Additionally, plaintiff has difficulty with some household chores. She still uses the TNS unit to relieve pain and spasm. In the mornings plaintiff engages in a regimen of yoga exercise which stretches the muscles and relieves muscular tension. Dr. Fox testified that this type exercise can be beneficial to persons like plaintiff suffering from tenseness and tightness in the back muscles.
The testimony of plaintiff’s boyfriend, Patrick LeRay, substantiates plaintiff’s claims of continued pain since the accident and of her forced limitation of physical *801 activity. He testified that after the accident she complained of pain in her back almost daily. LeRay, a registered nurse, often massaged plaintiff’s back and neck, noting that the muscles were often knotted and in spasm. LeRay testified that prior to the accident plaintiff was very active, engaging in dancing, gymnastics and sports, but, since the accident, plaintiff’s physical activities have declined because of her back problems.
Appellants argue that plaintiff’s injuries are not so severe as to warrant a $10,000 pain and suffering award and that, under the circumstances of this case, the trial court abused its discretion in making such a large award. Appellants point out that the accident was a minor one and that immediately after the accident plaintiff went grocery shopping and out to dinner. Plaintiff reported for work as usual the following day and continued to work regularly. Appellants argue that plaintiff failed to bear her burden of proof because she failed to produce her co-workers as witnesses to substantiate her complaints of back pain and only presented her boyfriend who testified that plaintiff continued her daily exercise routine after the accident. Appellants argue that continuation of such a strenuous exercise regimen belies the severity of plaintiff’s injuries. Additionally, appellants point out that plaintiff did not seek medical help until 12 days after the accident, after she spoke with her attorney. Appellants argue that plaintiff’s intermittent trips to the doctor with subjective complaints of pain were made merely to bolster her damage claim.
A close review of the record reveals that appellants’ arguments are without merit. Both Dr. Fox and Mr. Teitjen testified to objective signs of plaintiff’s injuries and both testified she was not a malingerer. The testimony of plaintiff’s boyfriend further substantiates plaintiff’s claim. He testified that before the accident, plaintiff engaged in a daily exercise regimen which included yoga, dance and gymnastic exercises. After the accident, plaintiff continued only her yoga or stretching exercises which Dr. Fox testified would be helpful to her back condition. Plaintiff and her boyfriend testified that, after the accident, plaintiff could no longer engage in the strenuous physical activity which she enjoyed prior to the accident.
The evidence establishes that plaintiff sustained a whiplash-type injury in the accident which caused her some pain and disability for which she had been treated for a period of two years at the time of trial. Plaintiff sufficiently proved the extent of her injuries and we find that the $10,000 pain and suffering award is supported by the evidence and is not an abuse of the great discretion of the trial court.
For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendants-appellants.
Affirmed.